1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

FANG CONG and LIN JIANG,

CASE NO. 2:21-cv-01703-TL

12

Plaintiffs,

ORDER ON MOTIONS TO DISMISS

v.

13

XUE ZHAO and VALVE
CORPORATION,

14

15

Defendants.

16

17    This is an action for copyright infringement regarding graphic designs used in a video

18  game. The matter is before the Court on motions to dismiss filed by Defendant Xue Zhao (Dkt.

19  No. 30) and Defendant Valve Corporation (Dkt. No. 47). Having reviewed Plaintiffs' responses

20  to the motions (Dkt. Nos. 32, 36, and 49) as well as the relevant record and governing law, the

21  Court DENIES Defendant Zhao's motion and GRANTS Defendant Valve's motion.

22                              I.      BACKGROUND

23    This litigation has been ongoing since December 2021. Plaintiffs Fan Cong and Lin Jiang

24  are Chinese citizens who allege that they worked with Defendant Xue Zhao (also a Chinese

1   citizen) on several video games for free "and without any written contract or agreement." Dkt.

2   No. 29 (First Amended Complaint) ¶¶ 2–4. Cong, Jiang, and Zhao are all proceeding *pro se*

3   (without attorneys representing them). Plaintiff Cong alleges she designed an original game logo

4   which was used in the demo version of the video game *Things as They Are* ("the Game"). *Id.*

5   ¶ 11. She alleges that she also designed a symbol for a "Fictional Religion." *Id.* ¶ 15. Plaintiff

6   Jiang alleges she "designed and drew a large number of images of Characters, Monsters and

7   Props" for the Game. *Id.* ¶ 19. Both Plaintiffs allege that "Plaintiffs' copyright shall be protected

8   in the United States, pursuant to The Berne Convention and 17 U.S.C. § 104(b)(2)." *Id.* ¶¶ 11,

9   19. They allege that their copyrighted artwork was infringed by independent game developer

10   Zhao in a "pay-to-play" version of the Game, which is available on Steam. *Id.* ¶¶ 8–28; Dkt.

11   No. 30 (Zhao's Motion to Dismiss) at 1. Steam is an online game distribution platform owned by

12   Defendant Valve Corporation. Dkt. No. 47 at 2 n.2.

13       Plaintiffs allege as follows: They are self-employed and had been collaborating on

14   creation of the Game with Zhao as a UI Designer and Lead Artist, respectively, until June 2018,

15   when they chose to end their cooperation. Dkt. No. 29 ¶¶ 2–5, 20; Dkt. No. 30 at 1. That same

16   month, Zhao posted an announcement on the social media platform Weibo that Plaintiffs were

17   withdrawing from the Game's production, all their works were to be removed from the Game,

18   and the Game would no longer be free to play. *Id.* ¶ 21. At least one of Plaintiffs' original

19   designs—Cong's original game logo—was incorporated into a free, demo version of the Game

20   that was "released on July 30, 2016 (CST)[1] by Defendant Xue Zhao in China." Dkt. No. 39,

21   ¶¶ 8, 11. Zhao hired new artists to work on the Game after Plaintiffs withdrew, but he gave those

22   artists Plaintiffs' original designs as reference materials without their authorization. *Id.* ¶ 24. The

23

24   _____
[1] As used by Plaintiffs and in this Order, CST refers to China Standard Time.

paid version of the Game was sold on Steam on June 18, 2019 (CST). *Id.* This version infringes on Cong's original game logo and symbol "for a Fictional Religion" and Jiang's "large number of images of Characters, Monsters, and Props." *Id.* ¶ 28. It also infringes on a headshot image that Jiang had authorized Zhao to use in a free-to-play version of a different game released in 2009. *Id.* In multiple Weibo articles, Plaintiffs expressed a desire to settle their dispute through litigation, while Zhao published Weibo articles in which he "express[ed] his unwillingness to respond to the lawsuit." *Id.* ¶¶ 32–37. Beginning in July 2021, Cong began corresponding with Valve, submitting evidence of infringement until the Game was removed from the Steam store. *Id.* ¶¶ 38–43. Valve forwarded Cong's complaint to the developer (Zhao) and let her know via email that Zhao had filed a Counter-Notice against the copyright complaint. *Id.* ¶¶ 44–45. The email stated that Valve would reinstate the Game unless Cong filed a lawsuit in this District within ten business days. *Id.* ¶ 47. Despite her filing of the instant suit and continued correspondence with Valve within that timeframe, Cong was disappointed to see that Valve reinstated the Game because she was unable to submit the documentation the company required in time. *Id.* ¶ 48–58. Valve informed her that they would only remove the Game from the Steam store upon receiving "a court order from the judge to do so." *Id.* ¶ 58.

## II.   LEGAL STANDARDS

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

1   that allows the court to draw the reasonable inference that the defendant is liable for the

2   misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . .

3   12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the

4   light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

5   *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

6   *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

7           A *pro se* party's pleadings must be "liberally construed" and held "to less stringent

8   standards than formal pleadings drafted by lawyers." *E.g.*, *Florer v. Congregation Pidyon*

9   *Shevuyim, N.A.*, 639 F.3d 916, 923 & n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S.

10  89, 94 (2007) (per curiam)). Even so, a court "should not supply essential elements of the claim

11  that were not initially pled." *E.g.*, *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859,

12  at *1 (W.D. Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit*

13  *Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F.

14  Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for

15  pro se litigants." (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))). "[I]t is

16  axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural

17  requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022)

18  (internal citations omitted).

19                              **III.    DISCUSSION**

20  **A.    Defendant Valve's Motion to Dismiss**

21          A complaint for copyright infringement must allege both (1) copyright ownership of an

22  infringed work and (2) that defendant(s) copied protected elements of that work. *Unicolors, Inc.*

23  *v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (citing *Pasillas v. McDonald's*

24  *Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). Valve argues that Plaintiffs have failed to adequately

1    plead the first element of copyright infringement—that they have copyright ownership of the

2    works at issue in either the United States or abroad. Dkt. No. 47 at 3–4. Cong and Jiang

3    generically allege that "Plaintiffs' copyright shall be protected in the United States, pursuant to

4    The Berne Convention and 17 U.S.C. § 104(b)(2)." Dkt. No. 29 ¶¶ 11, 15, 19.

5            To establish the first element, plaintiffs must show that their works are protected under

6    either domestic or foreign copyright law by alleging that: (a) they own properly registered United

7    States works, *see Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301

8    (2019) (interpreting the registration requirement under 17 U.S.C. § 411(a) expansively); or

9    (b) they own foreign works protected by a foreign country's copyright law. *Auto. Data Sols., Inc.*

10   *v. Directed Elecs. Can., Inc.*, No. C18-1560, 2018 WL 4742289, at *6 (C.D. Cal. Aug. 15, 2018)

11   ("[O]wners of a foreign copyright under the Berne Convention[2] can enforce protections

12   guaranteed under United States copyright law.").

13           As it is unclear whether Plaintiffs allege that they have a United States copyright or a

14   copyright under a foreign country, the Court will analyze both.

15       1.   **Copyright Ownership of a United States Work**

16           The Copyright Act of 1976 ("the Act"), 17 U.S.C. § 101 *et seq.*, lays out the legal

17   framework for copyright law in the United States. The Act defines a "United States work" as

18   follows:[3]

19           [I]n the case of a published work, the work is first published—

20

21   [2] The Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention") created the regime that governs international copyright relations, and the United States became a treaty party to the convention in 1989.

22   Berne Convention art. 5, ¶ 1, *opened for signature* Sept. 9, 1886, 102 Stat. 2853, 331 U.N.T.S. 217 (joined by the United States on March 1, 1989); *see also Golan v. Holder*, 565 U.S. 302, 306 (2012) (recounting this history). The Court takes judicial notice that China is a signatory to the Berne Convention. *See* WIPO-Administered Treaties,

23   World Intell. Prop. Org., available at https://perma.cc/DM3S-PHML.

24   [3] The Court only reproduces the parts of the definition that might be relevant in this case based upon the allegations included in the First Amended Complaint.

(A) in the United States; [or]

(B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States[.]

17 U.S.C. § 101. A work published online in a foreign nation may or may not qualify as a United States work, depending on whether it was available simultaneously in the United States. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1295, 1305–06 (11th Cir. 2012), *cert. denied*, 569 U.S. 919 (2013) (explaining that a presumption of simultaneous worldwide availability could not apply to restricted online distribution channels that are not accessible to all, such as websites requiring user payment).

For any United States work, Section 411 of the Act requires that "[e]xcept for an action brought for a violation of the rights of the author under Section 106A(a)[4] . . . no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). However, foreign works are exempt from the rule requiring registration of a work prior to the filing of a lawsuit. "Congress removed foreign works from Section 411(a)'s dominion in order to comply with the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright formalities for such works." *Fourth Est.*, 586 U.S. at 306–07 (citation omitted).

Here, the First Amended Complaint fails to allege that Plaintiffs' works are United States works and, if they are, that they have registered their works with the U.S. Copyright Office as required by Section 411(a). Nor have Plaintiffs pleaded that their works qualify as foreign works that are exempt from the registration requirement.

---

[4] This exception only applies to suits regarding claims for recognition or denial of authorship. *See* 17 U.S.C. § 106A (authorizing authors of visual artworks to bring suit to claim authorship of those works or to prevent use of their name in connection with works of others' creation).

2. **Copyright Ownership of a Foreign Work**

Even if works do not qualify as United States works, "because the United States joined the Berne Convention, it is required to afford foreign copyright holders the same protection as holders of domestic copyrights.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023) (cleaned up) (citation omitted). In cases where a foreign work is allegedly infringed in the United States, the first element of a copyright claim (whether copyright ownership exists at all) is determined by "the law of the country which has the closest relationship to the work." *Auto. Data Sols.*, 2018 WL 4742289, at *6 (internal citations omitted).

A plaintiff suing for copyright infringement of a foreign work must plead that their work is exempt from the registration requirement. *See Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*, No. C23-6012, 2024 WL 1772833, at *10 (N.D. Cal. Apr. 23, 2024). In the case of a non-U.S. citizen plaintiff, this requires alleging that (a) the original work remains unpublished, or (b) that the work was first published outside of the United States. *See Norris v. Goldner*, No. C19-5491, 2023 WL 5477229, at *6 n.9 (S.D.N.Y. Aug. 24, 2023), *appeal dismissed sub nom. Norris v. Golden Bell Studios, LLC*, No. C23-1324, 2024 WL 1254942 (2d Cir. Jan. 16, 2024) ("Non–U.S. citizens' unpublished works are exempt from registration, . . . as are works 'first published outside the United States.'" (internal citations omitted) (quoting *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 554 (S.D.N.Y. 2018))).

Here, Plaintiffs fail to allege in their First Amended Complaint any facts that support that their works are protected by copyright law in China or that, if the works are copyrighted in China, that they own the Chinese copyrights to the works. The First Amended Complaint does not mention any protection under Chinese law; instead, it only repeats several times that "Plaintiff's copyright shall be protected in the United States, pursuant to The Berne Convention

1  and 17 U.S.C. § 104(b)(2)." Dkt. No. 29 ¶¶ 11, 15, 19. Plaintiffs' responses to Zhao's Motion to

2  Dismiss make a similar statement. *See* Dkt. No. 32 at 5, Dkt. No. 36 at 5. Only in response to

3  Valve's Motion to Dismiss do Plaintiffs assert, without providing any factual basis, that their

4  works are copyrighted in China. *See* Dkt. No. 49 at 1 ("Plaintiffs hold complete copyright to

5  their works involved in this case, which are legally protected under Chinese Copyright Law.").

6  However, "Plaintiff[s] may not defeat a motion to dismiss by supplementing the[ir] complaint

7  through [their] opposition brief." *Voss-Curry v. Crown Equip. Corp.*, No. C22-1062, 2022 WL

8  4368047, at *2 (W.D. Wash. Sept. 21, 2022) (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899

9  F.3d 988, 998 (9th Cir. 2018)).

10         Though Cong, Jiang, and Zhao have engaged in copyright litigation proceedings in China

11  (*see* Dkt. No. 30 at 1; Dkt. Nos. 32, 36), those proceedings are not mentioned in the First

12  Amended Complaint. Nor would the mere fact that they engaged in copyright litigation in China

13  suffice to allege Chinese copyright ownership.

14         As Plaintiffs' First Amended Complaint fails to establish either that (1) the works at issue

15  are United States works that have been properly registered under the Act or (2) they are foreign

16  works to which Plaintiffs own the copyright and are exempt from the registration requirement,

17  the complaint must be dismissed. However, this deficiency could potentially be cured. *See*

18  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro

19  se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

20  complaint could not be cured by amendment.'"). Therefore, the Court will allow Plaintiffs an

21  opportunity to amend their complaint.

22  **B.    Defendant Zhao's Motion to Dismiss**

23         Because the First Amended Complaint fails to state a claim for copyright infringement,

24  the Court does not reach Defendant Zhao's motion. His motion is DENIED AS MOOT and may be

refiled if Plaintiffs choose to amend their complaint.

IV.            CONCLUSION

Accordingly, Defendant Valve Corporation's motion to dismiss (Dkt. No. 47) is GRANTED and Defendant Zhao's motion to dismiss (Dkt. No. 30) is DENIED AS MOOT. This case is DISMISSED WITHOUT PREJUDICE. The Court GRANTS Plaintiffs leave to file a second amended complaint **within thirty (30) days (*i.e.*, by no later than July 21, 2024)**.

Dated this 21st day of June 2024.

Tana Lin
United States District Judge