1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FANG CONG and LIN JIANG,

                Plaintiffs,

     v.

XUE ZHAO; "Conveyor Belt Sushi"; and
VALVE CORPORATION,

                Defendants.

CASE NO. 2:21-cv-01703-TL

ORDER ON DEFENDANT VALVE
CORPORATION'S MOTION TO
DISMISS

       This is an action for copyright infringement regarding graphic designs used in a video

game. The matter is before the Court on Defendant Valve Corporation's Motion to Dismiss

Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 54. Having reviewed

Plaintiffs' response (Dkt. No. 57), Defendant Valve's reply (Dkt. No. 60), and the relevant

record, the Court GRANTS the motion and DISMISSES Defendant Valve from this action.

# I.    BACKGROUND

## A.    General Background

This litigation has been ongoing since 2021. Plaintiffs Fan Cong and Lin Jiang are Chinese citizens who allege that they worked with Defendant "Conveyor Belt Sushi" (suspected to be an online identity of Defendant Xue Zhao[1]) on the video game *Things As They Are* ("*TATA*"), among other games. Dkt. No. 52 (Second Amended Complaint, "SAC") ¶¶ 7–12. Defendant Zhao, also a Chinese citizen, was also involved with the studio that designed *TATA*. *Id.* ¶¶ 14–16. Defendant Valve Corporation ("Valve") is an American video game developer, publisher, and digital distribution company headquartered in Bellevue, Washington. *Id.* ¶ 25. Defendant Valve is the creator and owner of Steam, a digital distribution platform. *Id.* ¶¶ 25, 27–28. Plaintiffs and Defendant Zhao are all proceeding *pro se* (without an attorney), while Defendant Valve is represented by counsel.

The core of Plaintiffs' claims is that Defendants have infringed on their copyrights in various artwork used in *TATA*: direct infringement by Defendants Zhao and Conveyor Belt Sushi, vicarious and contributory infringement by Defendant Valve. *See, e.g.*, Dkt. No. 52 ¶¶ 2–3, 194–197, 236–242. Defendant Zhao has filed two motions to dismiss (Dkt. Nos. 53, 55), one of which challenges the copyright status of the artwork at issue (Dkt. No. 53); both motions remain pending. However, in the instant motion, Defendant Valve does not challenge the copyright protections for the artwork at issue. *See generally* Dkt. No. 54. Thus, only for the purpose of resolving this motion, the Court will assume Plaintiffs hold copyrights in the artwork and will recite only the allegations relevant to Defendant Valve's role in this matter.

---

[1] Plaintiffs allege that Defendant Zhao admitted in a Chinese court that "he used the identity of 'Conveyor Belt Sushi' to communicate with Plaintiffs and other artists he hired." Dkt. No. 52 ¶ 177.

**B.    Defendant Valve's Alleged Role**

Defendant Zhao is a registered developer on Steam under the name "42teaparty." Dkt. No. 52 ¶¶ 15, 23. Game developers around the world upload their games to Steam for distribution and sale, and Defendant Valve exercises control over the games on the platform through a series of measures such as signing development agreements with game developers and maintaining a review process for the games. *Id.* ¶ 27. *TATA*, published in China by Defendant Conveyor Belt Sushi, was published on Steam on June 18, 2019, and is distributed and sold there. *Id.* ¶¶ 29–30.

From July to August of 2021, Plaintiffs described the alleged infringement in *TATA* to Defendant Valve. *Id.* ¶ 94. During that time, Plaintiff Cong and Defendant Valve engaged in a series of email exchanges in which Defendant Valve requested evidence, and which Plaintiff gradually provided. *Id.* ¶¶ 95–99. On November 27, Plaintiff Cong requested a status update from Defendant Valve, and Defendant Valve stated that it was not able to open an attachment from a prior email. *Id.* ¶ 100–101. On December 2, Plaintiff Cong responded with evidence of past correspondence and asked Defendant Valve to explain the delay and address the infringement. *Id.* ¶ 102.

On December 4, Defendant Valve notified Plaintiff Cong that it had removed *TATA* from Steam and forwarded her complaint to the developer. *Id.* ¶ 103. On December 8, Defendant Valve notified Plaintiff Cong that Defendant Zhao had filed a counternotice against Plaintiff Cong's copyright complaint. *Id.* ¶¶ 104–105. Defendant Valve also stated that, "in accordance with our policy," Plaintiff Cong had 10 business days to file a legal complaint in an appropriate federal district court and provide a copy to Defendant Valve. *Id.* ¶ 106. Otherwise, *TATA* would be restored to Steam. *Id.* Plaintiff Cong then engaged in email correspondence with Defendant Valve regarding legal process. *Id.* ¶¶ 107–109.

On December 18, Plaintiff Cong filed the original complaint in this matter and emailed a copy to Defendant Valve at dmca@valvesoftware.com. *Id.* ¶ 110. On December 21, Defendant Valve emailed Plaintiff Cong and asked for "the receipt of the courts verifying your complaint was submitted and received" and confirmed that the receipt was due by 6:00 p.m. Pacific Time on December 21. *Id.* ¶ 111. On December 23, Plaintiff Cong noticed that *TATA* had been restored to Steam. *Id.* ¶ 115. On December 31, Plaintiff Cong provided a court receipt to Defendant Valve. *Id.* ¶ 118. And on January 1, 2022, Defendant Valve responded to Plaintiff Cong:

> Thank you for providing us with a case assignment. The 14 days allowed for the filing have passed and the game was legally reinstated to the store, per the DMCA process. At this time we will remove the game from the Steam store once we have received a court order from the judge to do so. Please provide this to use [*sic*] at your earliest convenience.

*Id.* ¶ 119. Plaintiffs allege that Defendant Valve has "gained undue profits" from its restoration of *TATA* and has hurt Plaintiffs in related litigation in China. *Id.* ¶ 191.

## II.    LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. When a court reviews a request for dismissal under Rule 12(b)(6), "[a court] accept[s] as true all facts alleged in the complaint and construe[s] them in the light most favorable to plaintiff[ ], the non-moving party."

1    *DaVinci Aircraft*, 926 F.3d at 1122 (alteration in original) (quoting *Snyder & Assocs.*

2    *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

3                            **III.   DISCUSSION**

4           Defendant Valve seeks dismissal of Counts Three, Four, and Five of the SAC. *See* Dkt.

5    No. 54 at 3–8. As an initial matter, Plaintiffs concede that Counts Three and Five (*see* Dkt.

6    No. 52 ¶¶ 211–235, 243–247) are not cognizable causes of action. *See* Dkt. No. 57 at 1

7    ("Plaintiffs acknowledge a misunderstanding in the interpretation of the DMCA's safe harbor

8    provisions."); *see also* Dkt. No. 52 at 4–5 (arguing that these counts do not state cognizable

9    claims). Therefore, Counts Three and Five will be dismissed.

10          In Count Four, Plaintiffs allege vicarious and/or contributory copyright infringement. *See*

11   Dkt. No. 52 ¶¶ 236–242. Defendant Valve argues that the claim is barred by the statute of

12   limitations for such claims, which it claims is three years. *See* Dkt. No. 54 at 5–8. Specifically,

13   Defendant Valve argues that Plaintiffs were "fully aware" of the infringement in the summer of

14   2019, as the publication of *TATA* on Steam occurred on June 18 of that year and Plaintiffs

15   retained an attorney in August. *Id.* at 6. Thus, all infringement claims were required to have been

16   brought by June (or August) 2022. *See id.* at 7–8. In response, Plaintiffs argue that the statute of

17   limitations should run from January 1, 2022, when Defendant Valve emailed Plaintiff Cong to

18   request a court order before removing *TATA* from Steam again. *See* Dkt. No. 57 at 6–8. Plaintiffs

19   alternatively argue that: (1) the amendment adding Defendant Valve should be related back to the

20   original complaint; and (2) they should be permitted to file supplemental pleadings. *See id.* at 8–10.

21   **A.    Statute of Limitations for Vicarious and/or Contributory Copyright Infringement**

22          In general, the statute of limitations for a copyright claim is three years. 17 U.S.C.

23   § 507(b). "A claim ordinarily accrues when the plaintiff has a 'complete and present cause of

24   action.'" *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1239 (9th

Cir. 2022) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). "[A] copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (quoting *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019)). Courts have applied the three-year statute of limitations to claims for indirect copyright infringement as well. *See, e.g.*, *Al-Bustani v. Alger*, No. C22-5238, 2023 WL 1778814, at *4 (W.D. Wash. Feb. 6, 2023) (agreeing with the parties that a three-year limit applies to claim for vicarious copyright infringement); *Arc Music, Inc. v. Henderson*, No. C09-7967, 2010 WL 11597304, at *3 (C.D. Cal. Mar. 22, 2010) (applying three-year limit to contributory and vicarious infringement claims).

"[T]o succeed in imposing vicarious liability, a plaintiff must establish that [1] the defendant exercises the requisite control over the direct infringer and that [2] the defendant derives a financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *see also Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (defining vicarious liability as having "right and ability to supervise the infringing activity" and "a direct financial interest" in the activity). To succeed in imposing contributory liability, a plaintiff must establish that a defendant "(1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

Here, Plaintiffs allege that Defendant Zhao published *TATA* on Steam on June 18, 2019, and sold the game from that platform. Dkt. No. 52 ¶¶ 30, 71. Plaintiffs also allege that they sought advice from a lawyer in August 2019 regarding possible infringement. *Id.* ¶ 72. At that

point, Plaintiffs should have known (or reasonably should have discovered) that Defendant

Valve—the owner of Steam—allegedly had the ability to remove *TATA* from Steam and was

benefiting financially from its sale. Further, Plaintiffs should have known (or reasonably should

have discovered) that Defendant Valve was allegedly aware of, and participated in, the sale and

distribution of *TATA. See also infra* Section III.B. Thus, the statute of limitations began to run at

least by August 2019, and Plaintiffs were required to add Defendant Valve no later than August 2022.

Plaintiffs argue that the statute of limitations "should be calculated from the time

Plaintiffs actually discovered Defendant Valve['s] infringing acts." Dkt. No. 57 at 6. Plaintiffs

claim that on June 18, 2019, they were not "aware of the role [Defendant] Valve [ ] played in the

infringement." *Id.* Indeed, they argue that Defendant Valve's infringement "had not yet occurred

in 2019." Dkt. No. 57 at 7. Instead, Defendant Valve's email on January 1, 2022, was the point at

which Plaintiffs "finally discovered that Defendant Valve [ ] was actually protecting the

infringing game, and this action constituted an infringement." *Id.* at 8.

The Court disagrees. Plaintiffs allege that Defendant Valve "not only provides substantial

convenience and support" for the infringement, "but also directly participates in the distribution

and sale" of the infringing game. Dkt. No. 52 ¶ 239. Defendant Valve "earns a commission from

game transactions" and thereby "improperly profits" from each sale of the infringing game. *Id.*

¶ 240. Defendant Valve "has failed to exercise" its "ability to control and prevent the occurrence

of infringement" by "allowing the infringing game to exist on the Steam platform." *Id.* ¶ 241.

These allegations and theories were all known or could have been reasonably discovered upon

Plaintiffs' discovery that Defendant Valve was hosting *TATA* on Steam. *See, e.g.*, *Adobe Sys.*

*Inc. v. NA Tech Direct Inc.*, No. C17-5226, 2019 WL 5579472, at *9 (N.D. Cal. Oct. 29, 2019)

(holding contributory infringement claim accrued when plaintiff "discovered or should have

discovered . . . [third party's] direct infringement *and* Defendants' involvement in that

infringement" (emphasis in original)). To hold otherwise—that is, to delay the start of the

limitations period until a vicarious or contributory infringer is directly confronted and answers

the accusation—would prejudice defendants by allowing plaintiffs to sit on their hands and wait

indefinitely to trigger the start of the limitations period with a communication to the alleged

infringer. It would also prejudice plaintiffs by requiring such a communication to render liable a

vicarious or contributory infringer.

**B.    Relation Back**

Plaintiffs also ask the Court "for the retroactive effect of the amendments," namely, by

dating the SAC "back to the filing date of the original complaint." Dkt. No. 57 at 8–9. The Court

understands Plaintiffs to argue that the SAC should "relate back" to the original complaint, under

Federal Rule of Civil Procedure 15(c)(1)(C).[2] Defendant Valve does not address this request in

its reply. *See generally* Dkt. No. 57.

Federal Rule of Civil Procedure 15(c) states, in relevant part:

> (1) An amendment to a pleading relates back to the date of the
> original pleading when:
>
>> (A) the law that provides the applicable statute of
>> limitations allows relation back;
>
>> (B) the amendment asserts a claim or defense that arose out
>> of the conduct, transaction, or occurrence set out—or
>> attempted to be set out—in the original pleading; or
>
>> (C) the amendment changes the party or the naming of the
>> party against whom a claim is asserted, if Rule 15(c)(1)(B)
>> is satisfied and if, within the period provided by Rule 4(m)
>> for serving the summons and complaint, the party to be
>> brought in by amendment:

---

[2] Some courts "have construed new-party amendments as never relating back." *Tate v. United States*, No. C15-9323, 2019 WL 6799107, at *5 (C.D. Cal. Sept. 18, 2019), *report and recommendation adopted*, 2019 WL 6790686 (Nov. 1, 2019). Defendant Valve does not raise this argument.

> (i) received such notice of the action that it will not
> be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action
> would have been brought against it, but for a
> mistake concerning the proper party's identity.

"Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party." *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857–58 (9th Cir. 1986)).

Here, the SAC cannot relate back because Defendant Valve could not have known that Plaintiffs were mistaken about the proper party's identity. After all, in the original complaint, Plaintiff Cong identifies Defendant Valve as a company based in Washington State and the owner of Steam (*see* Dkt. No. 4 ¶ 6); alleges that she "described the facts of the infringement" to Defendant Valve (*id.* ¶ 27); and describes email communications with Defendant Valve (*see id.* ¶¶ 28–30). In other words, Plaintiff Cong appeared fully aware of Defendant Valve's status and role in potential copyright infringement. Yet Plaintiff Cong conspicuously did not name Defendant Valve in the complaint. Instead, she focused her claims on the author of the infringing game and ignored the platform openly hosting the game for sale.

Ultimately, Defendant Valve "had no reason to think that it would be a defendant but for a mistake." *Williams v. Aserraderos Arauco, SA*, No. C12-4912, 2015 WL 2228794, at *5 (N.D. Cal. May 12, 2015) (holding no relation back where plaintiff was aware of proposed new defendant's identity and role, "yet decided *not* to sue" that defendant (emphasis in original)); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010) ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a

mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C) are not

met."). And, critically, where a plaintiff knows the identity of a defendant when the complaint is

filed, relation back does not apply. *See Ramos-Santoya v. Ins. Co. of Pa.*, 379 F. App'x 596, 597

(9th Cir. 2010) (in suit over injurious car accident, affirming denial of relation back where

plaintiff had known defendant's insurer: "That was a mistake all right, but not one of identity.");

*Wilkins-Jones v. Cnty. of Alameda*, No. C08-1485, 2012 WL 3116025, at *17 (N.D. Cal. July 31,

2012) ("At best, Plaintiff (and her counsel) may have made an error in legal judgment as to the

Defendants' liability, but such an error is not the same as a mistake about the parties' respective

roles."). Plaintiff knew that the game was published, distributed, and sold on Steam (indeed,

Steam is included in the URL for the game) and should have been able to easily discover

Defendant Valve's involvement from there. Therefore, relation back does not apply here.

## C.    Supplemental Pleadings

Finally, Plaintiffs ask the Court for leave to file a "supplemental complaint." Dkt. No. 57

at 9–10. Plaintiffs allege that "many new circumstances have arisen" since the original

complaint, the "most significant" being Defendant Valve's reinstatement of *TATA* to Steam. *See*

*id.* Defendant Valve does not address this request in its reply. *See generally* Dkt. No. 57.

Federal Rule of Civil Procedure 15(d) states:

> On motion and reasonable notice, the court may, on just terms,
> permit a party to serve a supplemental pleading setting out any
> transaction, occurrence, or event that happened after the date of the
> pleading to be supplemented. The court may permit
> supplementation even though the original pleading is defective in
> stating a claim or defense. The court may order that the opposing
> party plead to the supplemental pleading within a specified time.

"The legal standard for granting or denying a motion to supplement under Rule 15(d) is

the same as for amending one under [Rule] 15(a)." *Lyon v. U.S. Immigr. & Customs*

*Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (quoting *Paralyzed Veterans of Am. v.*

1    *McPherson*, No. C06-4670, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008)). Courts in this

2    Circuit consider five factors when assessing whether to grant leave to amend under Rule 15(a):

3    "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment,

4    and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat.*

5    *Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*,

6    911 F.2d 367, 373 (9th Cir. 1990)) ("the *Allen* factors"), *aff'd sub nom. Oneok, Inc. v. Learjet,*

7    *Inc.*, 575 U.S. 373 (2015).

8        Here, Plaintiffs' request will be denied because a supplemental pleading would be futile.

9    Plaintiffs have already alleged in the SAC that Defendant Valve reinstated *TATA* to Steam on

10   January 1, 2022. *See* Dkt. No. 52 ¶ 119. Thus, Plaintiffs need not repeat this allegation in a

11   supplemental pleading and, at any rate, it does not affect the Court's analysis of the statute of

12   limitations, *see supra* Section III.A. Nor is it relevant that Defendant Valve's act may have affected

13   Plaintiffs' posture in Chinese court proceedings, as Plaintiffs describe. *See* Dkt. No. 57 at 9–10.

14                              **IV.    CONCLUSION**

15       Accordingly, Defendant Valve Corporation's Motion to Dismiss Second Amended

16   Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 54) is GRANTED. Defendant Valve is

17   DISMISSED from this action.

18       Dated this 15th day of November 2024.

19

20                                        Tana Lin
                                          United States District Judge
21

22

23

24